# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

STEVEN D. KING,          :
    Plaintiff,         :
                   :
                   :
v.                   :     CIVIL ACTION NO. 15-610-CG-N
                   :
ADAM AUSTIN, *et al*.     :
    Defendants.      :
                   :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on Defendants' Motion for Summary Judgment. (Doc. 55; Docs. 39-43, 49). After careful review of the pleadings, and for the reasons set out below, it is recommended that Defendants' motion be **granted** in part and **denied** in part, as set out in this report.

### I.    Background.

On May 19, 2015, Plaintiff Steven D. King alleges in his complaint that he was with his ex-girlfriend at a house on Main Street in Prichard, Alabama when police officers entered the home and ordered him to lay face down on the floor. (Doc. 1 at 3; Doc. 25 at 2). King claims he immediately followed the officers' commands and his hands were secured in cuffs behind his back.

(*Id.*).  While lying face down on the ground, handcuffed and compliant, King claims Officer Defendants Jennings Powell, Jeffrey Hillburn, and Joseph Goff proceeded to beat and kick him.  (Doc. 28 at 4-5; Doc. 1 at 3; Doc. 24 at 1; Doc. 51 at 1).   He further alleges the officers pushed guns to his head and exclaimed they would kill him if he moved.  (Doc. 1 at 3).

According to King, he was then led outside the house and "kicked off" a "very high cliff" (approximately two to three stories high) by Defendant Officers Jeffrey Hillburn, Joseph Goff, and Louis Screws, causing him to fall and hit his head on the paved street below.   (*Id*. at 4-5; Doc. 24 at 2).  While lying in the street, King alleges the officers again pushed guns to his head warning him "not to move." (Doc. 1 at 4-5).   King asserts he immediately requested but was denied medial attention and was placed in a police vehicle for transport to the Mobile County Police Department.  (*Id*. at 4).  While en route to the Mobile Police Department, King claims he "begged for medical attention and water" but it was again denied.  (*Id*.).

King asserts, "the abuse continued" upon arrival at the Mobile Police Department, where Detectives Adam Austin and Cecil Deon Thornton failed to give *Miranda* warnings to him for approximately one hour after they began conducting interviews of him, and an unnamed detective bent his arm up behind his back.  (*Id*.; Doc. 58 at 1).  King further asserts that during the interview, he was "coerced into saying what they wanted him to say," and that although he was ultimately given a bottle of water in response to his

requests, he was never provided medical care despite that his "head and body were in severe pain." (Doc. 1 at 4).

Plaintiff King brings this suit against Defendants[1] for use of excessive force in violation of the Fourth Amendment, and deliberate indifference to a serious medical need and coercion in violation of the Fourteenth Amendment. (Doc. 28 at 3-6). King claims that due to Defendants' actions, he has suffered "bad health, physical and mental," namely head pains, an "out of place" arm, and he now has to take prescription medications for pain and mental health. (Doc. 1 at 4; Doc. 25 at 2; Doc. 37 at 1; Doc. 58 at 1). He brings this action seeking monetary relief in the form of nominal, compensatory, and punitive damages, as well the termination of the defendants' employment with the Mobile Police Department. (Doc. 28 at 6).

Defendants have answered the suit, denying all material allegations and asserting the affirmative defenses of qualified and sovereign immunity[2]

---

[1] Plaintiff King's initial complaint named the City of Mobile, Mobile Police Department, Adam Austin, and several unnamed or fictitious parties as defendants. (Doc. 1 at 5). In his amended and superseding complaint, however, King voluntarily dismissed the City of Mobile, Mobile Police Department as a defendant in the action and named as defendants, Adam Austin, Cecil Deon Thornton, Jennings Powell, Louis Screws, Jeffrey Hillburn, and Joseph Goff. (Doc. 28). Thus, the City of Mobile, Mobile Police Department has been terminated from this action (*see* doc. 29), and the parties to this motion are the named defendants in Plaintiff's Amended Complaint. (Doc. 28).

[2] As state officials, Defendants are absolutely immune from suit for damages in their official capacities, *see Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

and failure to state a claim; Defendants have also submitted a Special Report in support of their position.  (Docs. 38-43, 49).  The Court has converted the Answers and Special Reports into a Motion for Summary Judgment (Doc. 55), and Plaintiff King has objected to the motion by filing a series of pleadings, including a Response to the motion.[3] (Doc. 58).  After an extensive review of the pleadings, the Motion for Summary Judgments is ripe for consideration.

## II.    **Summary Judgment Standard.**

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)[4]; *see Anderson v. Liberty*

---

Defendants are not immune, however, from suit in their official capacities for prospective injunctive relief to end continuing violations of federal law.  *See Ex parte Young*, 209 U.S. 123, 155-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908); *see also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Additionally, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  The undersigned will consider the defense of qualified immunity in this report and discusses the same, *infra*, at Section III.

[3] King has filed a "Motion to Produce Discovery" (doc. 61) which the Court has construed as a discovery request made pursuant to Rule 26(a)(1) of the *Federal Rules of Civil Procedure,* and Defendants have responded to said request.  (*See* Doc. 62).  Additionally, King filed a motion to appoint counsel, which is currently pending before the Court.  (Doc. 63).

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts.  The standard for granting summary judgment[, however,] remains unchanged. . . .  The

*Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

> 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand,
> the evidence of the nonmovant must be believed and all
> justifiable inferences must be drawn in its favor. *See Anderson*,
> 477 U.S. at 255.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286,

1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor

extends only to "genuine" disputes over material facts.  A genuine dispute

requires more than "some metaphysical doubt as to material facts."

*Garczynski*, 573 F.3d at 1165 (internal citations omitted).  A "mere scintilla"

of evidence is insufficient; the nonmoving party must produce substantial

evidence in order to defeat a motion for summary judgment.  *Id*.  In addition,

"[t]here is no burden upon the district court to distill every potential

argument that could be made based upon the materials before it on summary

judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th

Cir. 1995).  More importantly, where "opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment."  *Scott v.

Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *see

also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In

cases where opposing parties tell different versions of the same events one of

which is blatantly contradicted by the record—such that no reasonable jury

could believe it—a court should not adopt the contradicted allegations."

(citations omitted) (unpublished)).[5]

## III. Analysis.

King alleges violations of both the Fourth [6] and Fourteenth [7] Amendments of the United States Constitution against the defendants pursuant to 42 U.S.C. § 1983. In order "[t]o sustain a cause of action based on section 1983, [a plaintiff] must establish two elements: (1) that [he] suffered a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987) (internal quotations and citation omitted). While § 1983 provides a

---

[5] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

[6] The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *See, e.g., Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002); *see also Hicks v. Moore,* 422 F.3d 1246, 1254 n.7 (11th Cir. 2005) (detailing acts police had and had not taken, including turnover of custody to jailer and appearance before magistrate, and determining that--in absence of assertion that strip search and fingerprinting were separate from arrest-- Fourth Amendment applied.); *Powell v. Gardner,* 891 F.2d 1039, 1040 (2nd Cir. 1989)(Fourth Amendment applies while arrestee is "in the custody (sole or joint) of the arresting officer"); *McDowell v. Rogers,* 863 F.2d 1302, 1306 (6th Cir. 1988) (same); *Robins v. Harum,* 773 F.2d 1004, 1010 (9th Cir. 1985) (same).

[7] A pre-trial detainee's "rights exist under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). However, a pre-trial detainee's claims, "[a]re subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment." *Id.*

cause of action against police officers for constitutional violations that they might have committed, officers are also entitled to qualified immunity from § 1983 claims. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). Because the complaint allegations arise during Defendants' arrest and interview of Plaintiff, there can be no doubt that Defendants were acting within scope of their official responsibilities and performing discretionary functions at the time of the unconstitutional conduct occurred. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004); *accord Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) ("[I]t is clear that [a sheriff's deputy] was acting within the course and scope of his discretionary authority when he arrested [the plaintiff] and transported her to jail," during which he allegedly used excessive force). The burden then shifts to the plaintiff to show that the defendant's conduct "violated a clearly established statutory or constitutional right." *Grayden v. Rhodes*, 345 F.3d 1225, 1231 (11th Cir. 2003).

In the action at hand, Defendants contend that they were alerted on May 19, 2015, that King, "freshly released from prison from a 1989 First Degree Robbery conviction" had kidnapped Betty Morris and her three children (all under age 9) at gunpoint and forced them all into the victim's vehicle. (Doc. 49 at 1, Doc. 49-1 at 3). While King released the children at a relative's home unharmed, he preceded to an abandoned house with Ms. Morris, where he raped and sodomized Ms. Morris. (Docs. 49-1, 49-3, 49-4, 49-5). An exigent circumstances warrant was issued on King's cell phone and Defendants were able to track King to 3318 Main Street, Prichard, Alabama. (Doc. 49-1 at 3). Defendants surrounded the location and found the victim's vehicle parked behind an abandoned house at 3318 Main Street, Prichard, Alabama, and discovered King and the victim inside the house. (Docs. 49-1 at 3; 49-3 at 3; 49-4 at 3; 49-5 at 3; 49-6 at 3). King was seized inside the abandoned home with a black handgun in his waistband. (Doc. 49-1 at 3). The gun was later identified as a Jimenes Arms 9 millimeter handgun; the gun was fully loaded. (*Id.*). Defendants deny using excessive force incident to the arrest, deny failure to provide medical care for sustained injuries, and deny coercing King during his interview following his apprehension.

All claims asserted by Plaintiff King in this action arise incident to the arrest described above and will be discussed in turn.

### 1.    Fourth Amendment Excessive Force Claims.

Plaintiff argues that the officers violated the Fourth Amendment's ban

on the use of excessive force to effect an arrest by the assault that occurred after he was placed in handcuffs (behind his back) and fully compliant and nonresistant.  "Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) (internal quotes omitted). However, "[a]ny use of force must be reasonable," *id.*, and "[i]t is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006).  "Our cases hold that a gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); *Reese v. Herbert*, 527 F.3d 1253, 1273-74 (11th Cir. 2008); *Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000). The Eleventh Circuit precedent gives clear notice to a reasonable officer that this excessive force used without justification is unconstitutional.  *See, e.g., Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002); *Slicker v. Jackson,* 215 F.3d at 1232-33 (11th Cir. 2000) ("[I]n an excessive force case, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer to conclude the force was unlawful.") (citation, internal quotation marks, and ellipsis omitted)).

### a.   Claims against Defendants Jennings Powell, Jeffrey Hillburn, and Joseph Goff.

As stated previously, King claims that when Defendants Powell,

Hillburn, and Goff entered the abandoned house, he obeyed their orders and "did as he was told," but that despite his compliance and nonresistance, the officers kicked and beat him while he was handcuffed, lying face down on the ground. (Doc. 1 at 3; Doc. 25 at 2). In their Special Report, Defendants dispute King's allegation of excessive force and assert that:

> Mr. King was ordered to get down to the ground, but was not compliant. He was then knocked to the ground by Corporal Goff and was handcuffed behind his back.

(Doc. 49 at 2). While Defendants admit through this statement that force was used, they assert it was *de minimis* (a knock to the ground) and argue it was necessary to compel compliance and secure the plaintiff/arrestee. *See Graham v. Conner*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (In response to a resisting arrestee, officers are granted the right to use some degree of physical coercion to effect the arrest.).

Courts view force used incident to arrest as constitutional if "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397; *see also, e.g.*, *Stephens v. DeGiovanni*, 852 F.3d 1298, 1317 (11th Cir. 2017) ("In considering an excessive-force case, a court should determine whether an officer's conduct in making an arrest is objectively reasonable or if it is an over-reactive, disproportionate action for the situation relative to the response of the apprehended person."). "Courts must examine 'the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the

attendant circumstances and facts, and balance the risk of bodily [or psychological] harm to the suspect against the gravity of the threat the officer sought to eliminate.'"  *Id*. (internal quotation and citation omitted). Accordingly, the officers' acts are judged by the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Lee*, 284 F.3d at 1197-98 (quotation and citation omitted).   This reasonableness calculus also "allow[s] for the fact that police officers are often forced to make spit-second judgments - - in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation.  *Graham*, 490 U.S. at 1872 (citations omitted).

When viewing the record in the light most favorable to the plaintiff, there are however disputed issues of material fact in this action regarding whether or not the force applied by Defendants violated the Fourth Amendment.  Notably, there remains an issue regarding the amount of force used and the compliance of the plaintiff that is not resolved by the record evidence.  A thorough reading of the record reveals that the affidavits of Defendants Powell, Hillburn, and Screws do not maintain or clearly articulate the position stated in Defendants' Factual Background of the Superseding Special Report (Doc. 49) and instead lend support to King's version of the facts - that being that King obeyed the commands of the

officers and was handcuffed without incident. In fact, it is only Defendant
Goff who affirms that King resisted commands to lie on the ground and that
force was necessary to enforce compliance and the arrest. Summaries of the
pertinent portions of Defendants' affidavits are as follows:

> Defendant Powell affirms that he entered the abandoned house
> through the back door and that King "was apprehended inside
> the house and handcuffed." (Doc. 49-3 at 2). Powell contends an
> additional police unit was called to the location to transport
> King back to headquarters, and that he escorted King out of the
> house through the front door. (*Id*. at 3).
>
> Defendant Hillburn affirms that upon entering the abandoned
> home, the officers located both King and the victim. (Doc. 49-5
> at 2). The victim yelled to the officers, "he has a gun[,]" and the
> gun was observed in King's waistband. Hillburn further affirms,
> "We directed Mr. King to lie on the ground. He was handcuffed
> behind his back." (*Id*. at 3). Hillburn contends that King and
> the victim were led out through the front door of the home
> because the front of the home had more floorboards in place.
> (*Id*.).
>
> Defendant Louis Screws affirms that while waiting outside the
> abandoned home, providing cover for the officers who entered,
> he "heard officers give the suspect commands and Mr. King was
> taken into custody." (Doc. 49-4 at 3).
>
> Defendant Goff affirms he entered the house along with Officers
> Hillburn and Powell and was clearing the right side of the house
> when he overheard another officer give King the command to
> "show me your hand." (Doc. 49-6 at 3). Goff further affirms he
> then entered the room where King was located and the victim
> shouted, he has a gun." (*Id*.). Goff contends King "was not
> complying with the orders to get down and show his hands. [So,
> Goff] approached him from the front and attempted to knock
> him to the ground. Mr. King was [then] immediately handcuffed
> and taken into custody." (*Id*.). Goff affirms King was then
> escorted from the house through the front door, and Goff exited
> the house through the rear door and had no further contact with
> King. (*Id*.).

In addition to the factual uncertainty of the seizure, the extent of any injury inflicted is also unknown, as there are no medical records to aide in showing whether the used force was *de minimis* or excessive.  To date, no medical records (or even the standard body chart or medical questionnaire completed upon booking into the Mobile County Jail) have been provided. King has addressed this deficiency in his response to this motion by describing his inability and limitations in obtaining medical records and witness statements necessary to establish his claim.   (Doc. 58 at 1). Consequently, the record before the Court does not clearly refute King's allegations.  Therefore, the Court, for purposes of this motion, accepts the plaintiff's version of the events, that Defendants Powell, Hillburn, and Goff kicked and beat King as he lay unresisting on the ground; as such, Defendants are not entitled to qualified immunity or summary judgment at this time.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1334 (11th Cir. 2008) ("[P]unching a non-resisting criminal suspect for no apparent reason other than malice… is not is not protected by our constitution."); *Reese v. Herbert*, 527 F.3d 1253 (11th Cir. 2008)(Fourth Amendment prohibits "a severe beating of a restrained, non-resisting suspect."); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997)(Past resistance is no excuse to exert substantial force against suspect that has stopped resisting.).

### b.  Fourth Amendment Excessive Force Claims against Defendants Louis Screws, Jeffrey Hillburn, and Joseph Goff.

King claims that upon leaving the house Defendants Screws, Hillburn,

and Goff used excessive force on him while handcuffed and not resisting when they kicked him off of a two to three story cliff in between the abandoned house and the road below. (Doc. 51 at 1; Doc. 1 at 5). King claims he fell into the paved street and hit his head, and the officers responded to him on the ground by placing guns to his head and warning him "not to move." (Doc. 1 at 4-5). Defendants, however, recount quite a different version of the incident subject of this complaint.

Defendant Screws affirms the house in question was positioned above a retaining wall that separated the real property from the public street below. (Doc. 49-4 at 3). He further affirms the victim was brought from the house first and "was passed down the retaining wall to [him] and placed in a vehicle. . . . Officers then brought Mr. King out in handcuffs. While being passed down the retainer wall, Mr. King slipped and fell approximately 3.5 feet, landing on his rear end. [Defendant Screws] asked Mr. King if he was ok. [King's] only complaint was that his handcuffs were too tight." (*Id.*). King was then transported to Mobile Police Department for questioning, and Defendant Screws drove the victim to a nearby hospital. (*Id.*).

Defendant Hillburn provides in his affidavit that "[w]hile moving from the front of the house to the ground below, Mr. King slipped and hit the ground. I offered him medical assistance which he declined." (Doc. 49-5 at 3). According to Hillburn, King was then placed in a patrol car and taken to the Mobile Police Department to be interviewed. (*Id.*).

Defendant Goff affirms that he existed the house through the rear door, while King was escorted through the front door of the house, and further affirms he had no further contact with King.  (Doc. 49-6 at 3).

The objective photographic evidence of record refutes King's version of the facts and reveals that King's fall was not from a two or three-story cliff (as alleged by the plaintiff) but rather an approximate three-foot retaining wall (as more accurately depicted by the defendants).  (*See* Doc. 49-3 at 5). The photograph illustrates an abandoned house, at 8813 Main Street, Prichard, Alabama, which is elevated from the public street and separated by a brick retaining wall and metal "guard" railing.  The guard railing is fixed above the wall and appears to be "waist high" and run the length of the lot on which the home sits.  The railing, like the house, is dilapidated and contains sections of railing possessing two rows of metal bars (one positioned at approximately "knee" height and another at "waist" height) and then sections containing only the upper row of the railing (positioned at "waist" height).

Considering King's allegations in conjunction with this photographic evidence, it is apparent that the record contradicts King's description of "the cliff", so that no reasonable jury could believe King's version.  Thus, the Court will not adopt King's contradicted allegations.  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by

the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted)).  Accordingly, the evidence taken as a whole reveals, King was led out of the house and passed under the railing to Defendant Screws below.  The photographic evidence exposes that it would be impossible to be "kicked" off the cliff or wall as alleged by King and no reasonable jury could accept such allegations based on the objective evidence of record.  Based on the totality of the record evidence, the Court concludes that Plaintiff's fall was either accidental or *de minimis* and does not rise to the level of a constitutional violation, and the record lacks any evidence that Defendants acted unreasonably in transferring Plaintiff from the arrest site to the police vehicle.  *See Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (Officer's grabbing an arrestee, shoving him against a car, kneeing him in the back, pushing his head against the car, and searching his groin area in an uncomfortable manner was considered *de minimis* force and did not support a claim for excessive force); *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001) (If a "reasonable officer would believe that this level of force is necessary in the situation at hand" then the force used will not be found unconstitutional.).

Following his fall, King alleges he landed on the street, where Defendants pushed guns to his head and told him not to move.  In considering the reasonableness of Defendants' threat of deadly force while King lay on the street, the Court finds no constitutional violation.  Given the

seriousness of the kidnapping, rape, sodomy, and possession of a firearm charges that King was facing, it is reasonable that an officer at the scene would fear for their safety, the safety of the community, and consider King to be a potential flight risk. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009) ("[T]he only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded."); *see also Graham*, 490 U.S. at 396 (explaining that a "standard of reasonableness at the moment applies"); *Terry v. Ohio*, 392 U.S. 1, 20-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (reasonableness is viewed from the perspective of a reasonable officer on the scene without the benefit of hindsight). Consequently, the record is completely void of evidence that the officers acted in an objectively unreasonable way or with gratuitous force, and the Court finds no constitutional violation related to this claim. Thus, it is recommended that summary judgment be granted in favor of Defendants Screws, Hillburn, and Goff as to this claim.

2.      **Fourteenth Amendment Claim of Deliberate Indifference to a Serious Medical Need against Defendants Adam Austin, Cecil Deon Thornton, Jennings Powell, Louis Screws, Jeffrey Hillburn, and Joseph Goff.**

Plaintiff asserts that he was denied medical care after he was beaten by officers and kicked off a cliff. Plaintiff alleges he suffered severe head and body pain but all attempts to obtain medical treatment were denied from the time he left the abandoned house until after he was interviewed at the Mobile Police Department. Defendants categorically deny that King was beaten

while being placed under arrest as referenced *supra*.  And, while they admit that King suffered a fall while being escorted over the retaining wall at the abandoned house, they refute that King requested medical care and was denied it; instead, Defendant Hillburn contends he offered King medical care which King declined.

In order to prevail on a claim of deliberate indifference to a serious medical need in violation of the Fourteenth Amendment, King must establish, "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).[8]  "A serious medical need 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002) (Serious medical needs are generally those "requiring immediate medical attention" or emergency treatment.).  Thus, King has the burden of first showing that his need for medical assistance was observable to the untrained medical eye.

---

[8] While King's deliberate indifference claims are to be analyzed pursuant to the Fourteenth Amendment, the claims are nonetheless subject to the same scrutiny as if they had been brought pursuant to the Eighth Amendment's Cruel and Unusual Punishment's Clause.  *See City of Revere v. Massachusetts Gen Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L. Ed. 2d 605 (1983).

Additionally, given that Defendants have asserted the defense of qualified immunity, King bears the burden of showing that, "the preexisting law [made] it obvious that the defendant[s'] acts violated the plaintiff's rights in the specific set of circumstances at issue. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (citing *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005).

Throughout his pleadings, King's description of his physical state and need for medical attention is sparse and vague, as he fails to allege in his pleadings any observable blood, bruising, or the need for stitches, x-rays, or surgery subsequent to the incident; he further fails to plead if and when he ultimately received medical attention and what that treatment was. In fact, and oddly, the entire record before the Court is completely void of any medical records or evidence necessary to objectively analyze the severity of the allegations. Generally, a deliberate indifference claim so lacking in the establishment of the seriousness of an injury or medical need would not survive summary judgment, but the Court concludes the totality of the record and King's status as a *pro se* plaintiff demands leniency at this juncture.

King has repeatedly argued his inability to obtain medical records (along with witness statements and "Internal Affairs" investigation records) to support his allegations – thus indicating that such records exist and have yet to be produced. (Doc. 24 at 2; Doc. 58 at 1). Additionally, Defendants contend that Officer Hillburn offered King medical assistance but that King

declined; this "offer" alone insinuates or suggests that there may in fact have been a need for medical treatment as alleged by King.  Drawing all inferences in favor of King, as the Court must at this stage of the proceeding, there remains the possibility that King may have experienced a serious medical need and that possibility may not be ignored or disregarded at this stage of the proceedings.[9]

Consequently, the Court concludes that summary judgment as to this claim is denied as premature at this time.

### 3. Fourteenth Amendment Claim of Coercion during Police Interview against Defendants Adam Austin and Cecil Deon Thornton.

King alleges in his complaint that once at the Mobile County Police Headquarters, "the abuse continued by the detectives" when a detective "bent

---

[9] Notably, Plaintiff has made a request for $3,000,000 in damages as compensation for his claim.  (Doc. 28 at 6).  As noted above, it is difficult to discern from the pleadings or at this stage whether or not Plaintiff has in fact suffered a physical injury at all or one that is greater than *de minimis* in his complaint.  The Court notes that in order for King's recovery of compensatory or punitive damages to proceed, Plaintiff must demonstrate that he suffered a physical injury greater than *de minimis*.  *See* 42 U.S.C. § 1997e(e).  If King can establish a constitutional claim, but cannot show a physical injury greater than de minimis, he may recover nominal damages which are not precluded by § 1997e(e); however, recovery for nominal damages is typically an award of one-dollar.  *See Carey v. Piphus*, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."); *Harrison v. Myers*, CA No. 10-0566-KD-N, 2011 U.S. Dist. LEXIS 82738, 2011 WL 3204372, at *7 (S.D. Ala. July 13, 2011) (unpublished) (finding that the prisoner's request of $2,500 was not for nominal damages inasmuch as nominal damages implies a mere token or trifling).

his arm up" behind his back, questioned him for an hour before *Miranda* warnings were given, denied him water, and "coerced [him] into saying what they wanted him to say."  (Doc. 1 at 4). Inasmuch as these allegations fail to state a constitutional claim, the Court concludes that summary judgment should be granted in favor of Defendants for the reasons set out below.

Taking Plaintiff's allegation as true, that *Miranda* warnings were administered an hour into the custodial interrogation, there can be no civil liability.  *Chavez v. Martinez*, 538 U.S. 760, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003) (Failure to read Miranda warnings did not violate constitutional right and was not grounds for § 1983 action).  In order to state a claim under § 1983, King must establish a violation of a right arising under the Constitution or federal law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986).  The law on this issue is clear, *Miranda* procedures are "not themselves rights protected by the Constitution," but are "prophylactic measures" to protect a suspect's trial rights against the constitutionally protected right against self-incrimination.  *New York v. Quarles*, 467 U.S. 649, 654, 104 S. Ct. 2626, 81 L. Ed. 2d 550 (1984).  "The constitutionality of *Miranda* warnings lie within the scope Fifth Amendment, one's right against self-incrimination.  *Id*.  The Court in *Miranda* required law enforcement to advise custodial suspects of their right to remain silent and their right to counsel before and during

interrogation, thereby making a suspect's unwarned statements inadmissible at trial. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In this action, King's allegations are not centered on the admissibility of his statements made or his right against self-incrimination; as such, there is no constitutional due process right to *Miranda* warnings being given before a suspect's interrogation begins. *See Jones v. Cannon*, 174 F.3d 1271, 1291 (11th Cir. 1999) ("We agree with the Third, Seventh, Eighth, and Tenth Circuits that failing to follow *Miranda* procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created.").

As to King's blanket allegation of coercion, this claim is essentially "an unadorned the-defendant unlawfully-harmed-me accusation," which is not permissible pursuant to Fed. R. Civ. P. 8(a). *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993) (internal quotation omitted)(Plaintiffs are required to plead "'a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim' is and the grounds upon which it rests."). Indeed, the record before the Court lacks sufficient details to establish King's claim for coercion, such as "'the [accused's] lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged

nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.'" *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010) (quoting *Waldrop v. Jones*, 77 F.3d 1308, 1316 (11th Cir. 1996)(brackets in original)(internal citation omitted). King's pleadings provide no indication of the length of the police interrogation; his claim that he was denied water while in police custody is refuted by his own admittance that he ultimately received water during the interrogation.  (Doc. 1 at 4). *Carter v. DeKalb Cnty.*, 521 F. App'x 725 (11th Cir. 2013) (Suspect's denial of food and water requests during three-hour interrogation, which led to hospitalization via ambulance transfer, did not rise to level of a constitutional violation); *Chandler v. Crosby,* 379 F.3d 1278, 1289-90 (11th Cir. 2004) (Suspect's holding conditions must be "extreme" and pose "an unreasonable risk of serious damage to his future health" to rise to the level of a constitutional violation.).  Additionally, and importantly, King's complaint is void of any threats, promises, and false or misleading statements. *See Tinker v. Beasley*, 429 F.3d 1324, 1331 (11th Cir. 2005) (Due process violation occurs during interrogation only if "the specific conduct alleged rises to a level of coercive interrogation that 'shocks the conscience.'").

Essentially, the only questionable action occurring during the interview alleged by King is that his arm was bent up behind his back. King, however, fails to name or identify as a defendant the officer who grabbed his arm, and fails to articulate any of the circumstances surrounding the alleged

assault.  This lack of factual pleading prohibits the Court, or any fact-finder, from concluding that the claim is facially plausible because "the reasonable inference that the defendant is liable for the misconduct alleged," cannot be drawn, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and King's claims fail to "possess enough heft to 'sho[w] that [he] is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (second brackets in original). Additionally, Defendant Austin denies using force on Plaintiff, and Defendant Thornton denies even coming in to contact with Plaintiff, and King fails to object or refute their statements.  Consequently, the record is void of evidence to suggest that Defendant Austin or Thornton coerced or used force against King during his custodial interview; thus, the Court recommends summary judgment be granted on this issue in favor of Defendants and this claim be dismissed.

## IV.    Conclusion.

Based on the foregoing analysis, the undersigned concludes that there are no genuine issues of material fact on the claims of excessive force for kicking Plaintiff off a cliff (discussed at section III., 1., b.) and coercion or force used during the interview (discussed at section III., 3) and Defendants are entitled to judgment as a matter of law on these claims and causes of action interposed by Plaintiff.  Therefore, it is recommended that Defendants' Motion for Summary Judgment be **granted** on these counts.

Additionally, it is recommended that summary judgment be **granted** in favor of Defendant Cecil Deon Thornton and all claims against him be **dismissed** as the record demonstrates Thornton was not present during the complained of events.

Furthermore, the undersigned concludes there remain genuine issues of material fact on the claims of excessive force used during the seizure of Plaintiff (discussed at section III., 1., a.) and deliberate indifference to medical care (discussed at section III., 2). Accordingly, it is recommended that Defendants Jennings Powell, Jeffrey Hillburn, Joseph Goff, Louis Screws, and Adam Austin are not entitled to judgment as a matter of law on these claims and causes of action interposed by Plaintiff. Therefore, it is recommended that Defendants' Motion for Summary Judgment be **DENIED** on the counts of excessive force during the seizure of Plaintiff and deliberate indifference to Plaintiff's medical needs.

The instructions that follow contain important information regarding objections to this Magistrate Judge report and recommendation.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c).

The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 6th day of September 2017.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**